IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| MARY VIRGINIA CAMPBELL, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-05-0872 |
| | § | |
| BRIDGESTONE (USA), INC., *et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

Defendant Bridgestone Corporation has moved to dismiss under Rule 12(b)(2) of the Federal Rules of Civil Procedure, asserting a lack of personal jurisdiction in Texas. (Docket Entry No. 30). Plaintiff Mary Virginia Campbell has not responded. This court grants the motion to dismiss, for the reasons stated below.

**I.     Background**

Campbell's amended complaints assert claims under Texas law for design, manufacturing, and marketing defects in an automobile tire, which allegedly caused it to separate while she was driving. (Docket Entry Nos. 1, 6, 9). Campbell sued Bridgestone Corporation and numerous other defendants, alleging that on June 20, 2003, her right rear tire separated and her car spun out of control. (Docket Entry No. 9, ¶ 8). The tire at issue was apparently sold by Firestone, a separate corporation indirectly owned by Bridgestone Corporation since 1988. Bridgestone Corporation is incorporated under the laws of Japan and maintains its headquarters and principal place of business in Tokyo, Japan. (Docket

Entry No. 30, Ex. 1, Affidavit of Tomohiro Nakamoto, ¶ 4). Bridgestone Corporation is the "indirect parent" company of Firestone. According to Nakamoto, General Manager of the Bridgestone Legal Department, Bridgestone Corporation: (1) is not licensed to do business in Texas; (2) does not have, and has never had, offices, places of business, post office boxes, or telephone listings in Texas; (3) does not have employees in Texas; (4) does not have, and has not had, real estate, bank accounts, or other interest in property in Texas; (5) has not incurred any obligations to pay, and has not paid, any taxes in Texas; (6) has not conducted any regular and ongoing advertising, solicitation, marketing or other sales promotion activities in Texas; (7) has not sold or delivered products or goods to Texas, and has not participated in the decision to sell or deliver any good or product to Texas; (8) has not entered into a contract in Texas at any time relevant to this litigation; and (9) has never filed suit in Texas state court. (*Id.* at ¶¶ 10–13).

Bridgestone Corporation notes that tires bearing the Bridgestone brand are sold in Texas, but these tires are not sold *by* Bridgestone Corporation. (*Id.* at ¶ 6). Firestone and other entities and distributors purchase tires in Japan and then sell them in the United States. "Bridgestone exercises no control over where and to whom such tires are sold. All Bridgestone manufactured tires that come as original equipment on vehicles manufactured in Japan and sold in the United States are purchased by the vehicle manufacturer in Japan. Bridgestone exercises no control over where and to whom such vehicles are sold." (*Id.*). From Bridgestone Corporation's perspective, all business is done in Japan, and only in Japan. (Docket Entry No. 30, Ex. 2, Affidavit of Nelson Miller, ¶ 4).

## II.      The Legal Standards

### A.      Rule 12(b)(2)

A party challenges personal jurisdiction through FED. R. CIV. P. 12(b)(2). When a nonresident defendant challenges personal jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. *Stuart v. Spademan,* 772 F.2d 1185, 1192 (5th Cir. 1985) (citations omitted). "The court may determine the jurisdictional issue by receiving affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery." *Id.* "When the district court rules on a motion to dismiss for lack of personal jurisdiction 'without an evidentiary hearing, the plaintiff may bear his burden by presenting a *prima facie* case that personal jurisdiction is proper.'" *Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343 (5th Cir. 2002) (quoting *Wilson v. Bolin*, 20 F.3d 644, 648 (5th Cir. 1994)). The court "must accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 869 (5th Cir. 2000) (quoting *Latshaw v. Johnson*, 167 F.3d 208, 211 (5th Cir. 1999)) (additional citations omitted). The court is not obligated to credit conclusory allegations, even if uncontroverted. *Panda Brandywine Corp. v. Potomac Elec. Power*, 253 F.3d 865, 868 (5th Cir. 2001).

**B.     Personal Jurisdiction**

"In a diversity action, a federal court may exercise personal jurisdiction over a defendant to the extent permitted by the applicable state law." *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).  The Texas long-arm statute, TEX. CIV. PRAC. & REM. CODE ANN. § 17.041 *et seq.*, confers jurisdiction to the limit permitted by due process.  *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990) (citation omitted); *see also Helicopteros Nacionales de Colombia v. Hall,* 466 U.S. 408, 413 n.7 (1984).  In Texas, the personal jurisdiction inquiry is coterminous with the due process analysis.  *Fielding v. Hubert Burda Media, Inc.*, 415 F.3d 419, 424–25 (5th Cir. 2005).

Due process limits the exercise of personal jurisdiction over nonresident defendants to cases in which defendants purposefully establish "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  A court must determine whether the defendant has established the requisite minimum contacts with the forum state and whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice.  *Polythane,* 993 F.2d at 1205 (citations omitted).

A court may assert personal jurisdiction under a theory of either "general" or "specific" personal jurisdiction.  A court exercises specific jurisdiction over a defendant if the cause of action alleged arises out of or is related to the defendant's contacts with the forum.  *Helicopteros*, 466 U.S. at 414 n.8.  When a court exercises personal jurisdiction over

a defendant in a case *not* arising out of or related to the defendant's contacts with the forum state, the court is exercising general jurisdiction over the defendant. *Id.* at 414 n.9.

A court may exercise specific jurisdiction if: (1) the defendant purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; and (2) the controversy arises out of or is related to the defendant's contacts with the forum state. *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). The plaintiff must demonstrate a nexus between the nonresident defendant's contacts with the forum and the cause of action. *Rittenhouse v. Mabry,* 832 F.2d 1380, 1390 (5th Cir. 1987). A court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." *Southmark Corp. v. Life Investors, Inc.,* 851 F.2d 763, 772 (5th Cir. 1988) (citations omitted). Specific jurisdiction is limited to adjudication of the particular controversy that arises out of or is related to the defendant's contacts with the forum. *Petroleum Helicopters, Inc. v. Avco Corp.*, 804 F.2d 1367, 1370 (5th Cir. 1986). Even a single act can support specific jurisdiction if it creates a "substantial connection" with the forum. *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

When the cause of action does not arise from or relate to the foreign defendant's purposeful conduct within the forum state, due process requires that the foreign defendant have engaged in continuous and systematic contacts with the forum state before a court may exercise general personal jurisdiction. *Helicopteros*, 466 U.S. at 414–15; *Bearry v. Beech Aircraft Corp.* 818 F.2d 370, 374 (5th Cir. 1987). The plaintiff must demonstrate contacts

of a more extensive quality and nature between the forum state and the defendant than those needed to support specific jurisdiction. *Dalton v. R & W Marine,* 897 F.2d 1359, 1362 (5th Cir. 1990) (citations omitted). "To exercise general jurisdiction, the court must determine whether 'the contacts are sufficiently systematic and continuous to support a reasonable exercise of jurisdiction.'" *Holt Oil & Gas v. Harvey,* 801 F.2d 773, 777 (5th Cir. 1986) (quoting *Spademan*, 772 F.2d at 1191 (additional citations omitted)). The "stream of commerce theory" cannot be used to obtain general jurisdiction over a defendant in the Fifth Circuit. *See Alpine View Co. Ltd. v. Atlas Copco AB*, 205 F.3d 208, 216 (5th Cir. 2000); *Bearry v. Beech Aircraft Corp.*, 818 F.2d 370, 375 (5th Cir. 1987).

When determining if one corporation's contacts with a forum can be the basis of a related corporation's contacts, courts have long presumed the institutional independence of related corporations, such as parent and subsidiary. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333 (1925). This presumption of corporate separateness, however, may be overcome by clear evidence. *Freudensprung*, 379 F.3d at 346 (citing *Dickson Marine, Inc. v. Panalpina, Inc.*, 179 F.3d 331, 338 (5th Cir. 1999)). Invariably such clear evidence requires an additional or a "plus" factor. There must be evidence of one corporation asserting sufficient control to make the other its agent or alter ego. *Id.*; *see also Patin v. Thoroughbred Power Boats, Inc.*, 294 F.3d 640, 653 n.18 (5th Cir. 2002) (citing cases). Moreover, the burden of making a *prima facie* showing of such symbiotic corporate relatedness is on the proponent of the agency/alter ego theory. *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854, 856 (5th Cir. 2000).

In *Hargrave v. Fibreboard Corporation*, 710 F.2d 1154 (5th Cir. 1983), the Fifth Circuit established factors to be considered in deciding whether a parent company can be held amenable to personal jurisdiction because of the acts of a subsidiary. *Id.* at 1159. The *Hargrave* factors are (1) amount of stock owned by the parent of the subsidiary; (2) whether the two corporations have separate headquarters; (3) whether the corporations have common officers and directors; (4) whether the corporations observe corporate formalities; (5) whether the corporations maintain separate accounting systems; (6) whether the parent exercises complete authority over general policy; and (7) whether the subsidiary exercises complete authority over daily operations. *Id.* at 1160. As a general matter, courts in the Fifth Circuit "demand proof of control by the parent over the internal business operations and affairs of the subsidiary in order to fuse the two for jurisdictional purposes." *Id.* (citing cases).

## III. Analysis

Campbell cannot establish general jurisdiction over Bridgestone Corporation because it lacks "continuous and systematic" contacts with Texas. Bridgestone Corporation conducts no business in Texas, nor has it engaged in any purposeful activity in or towards Texas. The fact that Bridgestone-brand tires are sold in Texas does not form the basis of general jurisdiction. *Cf. Alpine View Co.*, 205 F.3d at 216; *Bearry*, 818 F.2d at 375.

Bridgestone Corporation is not subject to this court's jurisdiction on the basis of the alleged acts of its subsidiary, Firestone. There is no indication that Bridgestone Corporation maintains the requisite control over Firestone to impute the jurisdictional contacts from the subsidiary to the parent. To the contrary, the two corporations are separate entities, maintain

separate shareholders' and board of directors' meetings, do not share common departments or businesses, keep separate accounts and corporate records, and file separate tax returns. (Docket Entry No. 30, Ex. 1, ¶¶ 14–16). Additionally, formal barriers exist between the management of the two corporations, and Bridgestone Corporation exercises no control over the marketing or sales decisions of Firestone. (*Id.*). Campbell has not made allegations that contradict these facts, nor sought any jurisdictional discovery to rebut these facts.

Specific jurisdiction over Bridgestone Corporation is also absent. Campbell has not specifically alleged that Bridgestone Corporation played any role in the design, manufacture, or marketing of the tire at issue. Bridgestone Corporation has not purposely availed itself of Texas in any way with regard to any alleged role in the production of the tire at issue. *Cf. Freudensprung*, 379 F.3d at 343. There is no alleged nexus between any activity by Bridgestone Corporation and the events at issue in the underlying suit. Campbell has not disputed the facts put forward by Bridgestone Corporation in connection with this claim. This court lacks jurisdiction over Bridgestone Corporation. *Accord Lawhorn v. Mitsubishi Motor Sales of America, Inc.*, No. 03-033 (S.D. Tex. July 14, 2003).

**IV.    Conclusion**

Bridgestone Corporation's motion to dismiss for lack of personal jurisdiction is granted.

SIGNED on December 9, 2005, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge

8